

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Charley Lockhart
State Treasurer
Austin, Texas

Dear Sir:                    Attention of Mr. Wm. A. Harrison

                             Opinion No. O-1552
                             Re: Should the cash placed with the
                                 State Treasurer through the Board
                                 of Insurance Commissioners be de-
                                 posited in a suspense account in
                                 the State Treasury? And related
                                 questions.

        Your request for an opinion on the questions
as are herein stated has been received by this department.
Your questions read as follows:

        "(1) Should the cash be deposited in a
suspense account in the State Treasury?

        "(2) If your answer to question 1 is in
the affirmative, should the deposit be made
in the suspense account of the Board of Insur-
ance Commissioners, or in the suspense account
of the State Treasurer?

        "(3) If your answer to question 1 is in
the negative, then must the State Treasurer
hold the cash in the vaults of the State Trea-
sury?"

        You refer to Section 6 of Senate Bill No. 135,
Acts of the 46th Legislature, which is set out in Vernon's
Annotated Civil Statutes under Article 5068-1 and Section
6 of the above mentioned article reads as follows:

        "Each association, not already required
by existing laws to do so, shall place with
the State Treasurer through the Board of Insur-
ance Commissioners a deposit equal to the largest
risk assumed on any one life or person, which

Hon. Charley Lockhart, Page 2

may be in cash or in convertible securities
subject to approval by the Board. Such de-
posit shall be liable for the payment of all
judgments against the association, and sub-
ject to garnishment after final judgments
against the association. When such deposit
becomes impounded or depleted it shall at
once be replenished by the association, and
if not replenished immediately on demand by
the Board, the association may be regarded
as insolvent and dealt with as hereinafter
provided.

"When any association shall desire to
state in advertisements, letters, literature
or otherwise, that it has made a deposit with
the Board as required by law, it must also
state in full the purpose of the deposit, the
conditions under which it is made, and the
exact amount and character thereof."

Article 4388, Vernon's Civil Statutes, reads
as follows:

"The State Treasurer shall receive daily
from the head of each Department, each of
whom is specifically charged with the duty
of making same daily, a detailed list of all
persons remitting money the status of which
is undetermined or which is awaiting the time
when it can finally be taken into the Treasury,
together with the actual remittances which
the Treasurer shall cash and place in his
vaults or in legally authorized depository
banks, if the necessity arises. The report
from the General Land Office shall include
all money for interest, principal and leases
of school, university, asylum and other lands.
A deposit receipt shall be issued by the Comp-
troller for the daily total of such remittances
from each Department; and the cashier of the
Treasurer's Department shall keep a cash book,
to be called 'suspense cash book,' in which to
enter these deposit receipts, and any others

issued for cash received for which no deposit warrants can be issued, or when their issuance is delayed. As soon as the status of money so placed with the Treasurer on a deposit receipt is determined it shall be transferred from the suspense account by placing the portion of it belonging to the State in the Treasury by the issuance of a deposit warrant, and the part found not to belong to the State shall be refunded. When deposit warrants are issued, they shall be entered in this cash book, as well as any refunds, and the balance shall represent the aggregate of the items still in suspense. Refunds shall be made in a manner similar to that in present use, except that separate series of warrants shall be used for making such refunds, to be called 'refund warrants,' and such warrants shall be written and signed by the Comptroller and countersigned by the Treasurer and charged against the suspense funds to which they apply. Such warrants shall then be returned to the Comptroller and delivered by him to the person entitled to receive them."

Funds that are placed in the "suspension account" of the State Treasury by state officials acting under Article 4388, supra, can only be drawn out of said account when and in the manner prescribed by said article. That is, as soon as the status of money so placed is determined, when it shall be transferred, if belonging to the State, by deposit in the State Treasury, and if found not to belong to the State, to be refunded. In either case the method is by warrant signed by the Comptroller and countersigned by the State Treasurer. The article is explicit in requiring the transfer to be made as soon as the status of the money is determined and not before. Clearly the word "status" includes every essential fact to its proper disposition, from the viewpoint of the State Treasurer, its then custodian. If it should belong to the State it must be deposited in the Treasury by means of a deposit warrant. If it does not belong to the State it must be refunded by means of a refund warrant. Also see the cases of Daniel, et al vs. Richcreek, et al, 118 SW 2nd, 935; Ex Parte Stephens, 94 SW 327.

Hon. Charley Lockhart, Page 4

The deposits made under Section 6 of Article 5068-1, supra, is for the protection of the public generally, and such deposits are liable for the payment of all the judgments against the associations, and suject to garnishment after final judgment against the association. The deposits or no part of them belong to the State but are placed in the State Treasury by virtue of Article 5068-1, in trust as a special fund for the purposes set out in said statute.

Article 4374, Vernon's Civil Statutes, reads as follows:

"All moneys received by the Treasurer shall be kept in the safes and vaults of the Treasury; and the Treasurer shall not keep or receive into the building, safes or vaults of the Treasury any money, or the representative of money, belonging to any individual except in cases expressly provided for by law; nor shall said Treasurer appropriate to his own use, or lend, sell or exchange any money, or the representative of money, in his custody or control as such Treasurer."

You are respectfully advised that your first question should be answered in the negative and it is so answered.

You are further advised that such funds shall be deposited in the State Treasury in a special fund for the purposes provided in Section 6 of Article 5068-1, and that such funds shall be kept or remain in the vault of the State Treasury.

Trusting that the foregoing fully answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED DEC 14, 1939

By _Ardell Williams_

ATTORNEY GENERAL OF TEXAS

Ardell Williams
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN

AW:AW